**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATTI RICH<br>2306 Village Rd.<br>Orwigsburg, PA 17961<br><br>Plaintiff,<br>v.<br><br>SALISBURY BEHAVIORAL HEALTH, INC.<br>2880 Pottsville Minersville Highway<br>Minersville, PA 17954<br>and<br>SALISBURY MANAGEMENT, INC.<br>1150 Wyoming Ave.<br>Wyoming, PA 18644<br><br>Defendants. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Patti Rich (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Plaintiff against Salisbury Behavioral Health, Inc. and Salisbury Management, Inc. (*hereinafter* collectively referred to as "Defendant," unless indicated otherwise) for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000d *et. seq.*), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), and the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et. seq.*).[1]

[1] Plaintiff will move to amend the instant Complaint to include violations of the Pennsylvania Human Relations Act ("PHRA") after full administrative exhaustion before the Pennsylvania Human Relations Commission ("PHRC"). Such claims will identically mirror Plaintiff's federal claims asserted herein under Title VII and the ADA.

Plaintiff asserts, *inter alia*, that she was unlawfully terminated from Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights under Title VII, the FMLA, and the ADA.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant Salisbury Behavioral Health, Inc. ("Defendant SBH") a healthcare organization that provides support and behavioral health services through various programs.

8. Defendant Salisbury Management, Inc. ("Defendant SMI") provides management support and administrative services to Defendant SBH.

9. While Defendant SBH appears on Plaintiff's paystubs, W-2, and handbook, Defendant SMI's name appears on various documents provided to Plaintiff throughout her employment, including but not limited to correspondence regarding her complaint of retaliation/harassment, her FMLA paperwork, and her performance evaluation form. Furthermore, Plaintiff's direct supervisor's e-mail address ended with "@salisburymgt.com."

10. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff was hired by Defendants on or about September 22, 2014 as a Program Director for the BHRS and CSBBH programs.

14. While employed with Defendants, Plaintiff was a dedicated and hard-working employee who did not receive any written discipline until after her complaints of sexual harassment (discuss further *infra*).

15. At all times relevant herein, Plaintiff was directly supervised by Ashley Lerner (Operations Director) and indirectly supervised by Cindi Mazza (Vice President/Chief Operating Officer).

16. On or about March 1, 2017, Plaintiff was subjected to sexual harassment when an employee, one Iris Staff (whom Plaintiff was training and overseeing and who reported to Plaintiff during the relevant time period), shoved a picture of male genitalia in her face.

17. Plaintiff reported the aforesaid incident of sexual harassment to Defendants' management, including but not limited to Lerner and Debbie Leighton (Office Manager).

18. Following her complaint of sexual harassment, Plaintiff was subjected to retaliation by Staff.

19. For example, Staff became increasingly hostile towards Plaintiff, refused to follow Plaintiff's instructions, was rude to her via e-mail, would yell and make comments about Plaintiff to other employees, and committed various other insubordinate acts.

20. In or about April of 2017, Plaintiff sent an e-mail to Lerner outlining Staff's retaliatory and insubordinate behavior.

21. Plaintiff's concerns about the aforesaid retaliatory behavior was also discussed with Mazza.

22. Despite addressing her concerns of retaliation with Lerner and Mazza, Plaintiff's complaints were never properly investigated or resolved and the aforesaid retaliatory behavior by Staff continued. In addition, Defendants' management also began to subject Plaintiff to retaliation in response to her aforesaid complaints.

23. For example, Defendants' management, including but not limited to Lerner and Mazza began to treat Plaintiff in a rude and condescending manner, failed to support her in

various circumstances regarding Staff, continued to give Staff's responsibilities to Plaintiff, yelled and screamed at Plaintiff, and ignored her concerns regarding Staff's retaliatory behavior (and/or made excuses for Staff's behavior).

24. In or about June of 2017 and again in July of 2017, Plaintiff was issued two pretextual disciplinary actions (following her complaints of sexual harassment and retaliation).

25. While Lerner agreed to withdraw Plaintiff's June, 2017 disciplinary action, as there was no basis for such, Lerner later presented Plaintiff with a "procedural review" form regarding the same allegations contained on her June, 2017 disciplinary action and was informed that she had to sign it (despite the fact that Plaintiff disagreed with its contents).

26. Following her July, 2017 bogus and pretextual write-up (documented as a "Written Warning"), Plaintiff filed a formal complaint of retaliation and harassment with Defendant's Human Resources ("HR") department, which was reviewed with Plaintiff by Michelle Smith - Vice President of Administration and Director of HR.

27. In her July 14, 2017 formal complaint of retaliation and harassment to Defendant's HR department (discussed *supra*), Plaintiff informed Defendant's HR Department that "Cindi [Mazza] stated that though I (Patti) felt nervous and/anxious about being in the workplace due to being sexually harassed and subsequent harasser behavior towards me that I (Patti) needed to deal with it. She then yelled at me for bringing up the topic with Allison Duke."

28. During the review of her July, 2017 complaint of retaliation and harassment with Smith, Plaintiff again brought up the fact that she was sexually harassed in March of 2017 (in order to provide context for the retaliation), to which Smith replied that she said she did not want to hear about the aforesaid sexual harassment anymore because she already knew all about it.

29. Upon information and belief, following her July 14, 2017 complaint of harassment and retaliation, Defendants again failed to properly investigate Plaintiff's concerns of retaliation.

30. It was not until over a month later (and after Plaintiff was already terminated), that she received a letter from Smith, stating "upon completion of the [alleged] investigation, we did not deem the allegations of harassment against Cindi Mazza and Ashley Lerner to be founded."

31. Towards the end of her employment with Defendants, in addition to being sexually harassed and retaliated against for complaining of sexual harassment, Plaintiff was also faced with the task of taking care of her very ill father, who was diagnosed with Parkinson's disease and was suffering from other health complications after undergoing surgery.

32. Plaintiff was required to miss time from work as a result of her father's aforesaid serious health condition and therefore, in or about early August of 2017, she requested intermittent FMLA leave to care for her father.

33. On or about August 11, 2017, Plaintiff received confirmation regarding her aforementioned request for FMLA. She was also sent a "Certification of Serious Health Condition of Family Member" form and was given until August 26, 2017 to have it completed and returned.[2]

34. On or about August 21, 2017, before Plaintiff had an opportunity to submit her FMLA paperwork to Defendants, she was informed that she was being terminated from her employment with Defendants.

[2] Lerner was copied on this communication.

35. Present during her termination meeting was Kimberly Benner (CEO) and Kristen Havorka (Human Resources).

36. Benner and Havorka each knew of Plaintiff's sexual harassment and retaliation complaints (discussed *supra*).

37. The purported reasons given for Plaintiff's termination was that (1) she "had provided false, clinically inappropriate information to the MCO regarding what she stated was a company policy concerning discharging clients, when in fact the company does not have such a policy"; and (2) she was not providing a "sufficient level of supervision and support to employees within the CSBBH program, was inaccessible to employees when needed, and had created a work environment that led to the resignation of at least 2 individuals."

38. Defendants' alleged reasons for terminating Plaintiff are both false and pretextual.

39. Plaintiff was terminated (1) shortly after complaining of sexual harassment; (2) after being subjected to months of retaliatory treatment by the sexual harasser and Defendants' management; (3) shortly after her last complaint of said retaliatory treatment; (4) at a time when she was confiding in Defendants' management about her father's aforesaid disabilities; (5) in close proximity to when she requested intermittent FMLA to care for her father; and (6) without being issued various steps of discipline under Defendants' progressive discipline policy.

**Count I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Hostile Work Environment & Retaliation)**
**- Against Both Defendants -**

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff was sexually harassed on or about March 1, 2017 (discussed *supra*).

42. Plaintiff complained of the aforesaid sexual harassment to Defendants' management, which was upon information and belief conveyed to Defendants' HR department.

43. Following her aforesaid complaint of sexual harassment, Plaintiff was subjected to retaliatory treatment by the harasser and Defendants' management, which in turn affected Plaintiff's ability to perform her job functions in an effective manner.

44. Plaintiff complained to Defendants' management and HR department on various occasions regarding the retaliatory treatment she was being subjected to; however, her concerns were never properly addressed and the retaliatory treatment only grew worse.

45. Plaintiff was not only issued pretextual discipline because of her complaints of sexual harassment and retaliation but she was ultimately terminated for same as well.

46. Defendants' actions as aforesaid constitute violations of Title VII.

**Count II**
**Violations of the Americans with Disabilities Act, as Amended ("ADAAA")**
**(Associational Disability Discrimination)**
**-Against Both Defendants-**

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. Towards the end of her employment with Defendants, Plaintiff requested intermittent time off from work due to her father's serious health conditions.

49. Plaintiff had advised Defendants' management of her father's serious health conditions and her need for time off related to same.

50. Shortly after her request to take intermittent time off from work to care for her father (which would have also been protected under the FMLA), Plaintiff was terminated from her employment with Defendants for completely false and pretextual reasons.

51. Upon information and belief, Plaintiff was terminated by Defendants for (a) being perceived as distracted for dealing with her father's health problems outside of work; (b) being perceived as having to miss too much time from work to care for her father; and (c) other reasons in association with her father's health problems.

**Count III**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**
**-Against Both Defendants-**

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

54. Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

55. Plaintiff had at least 1,250 hours of service with the Defendants during her last full year of employment.

56. Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

57. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis for her father's serious health conditions.

58. Defendants committed interference and retaliation violations of the FMLA by (1) terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) considering Plaintiff's

FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to prevent her from taking FMLA-qualifying leave in the future.

59. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Building 2, Ste. 128
Bensalem, PA 19020
(215) 639-0801

Dated: February 26, 2018